IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION



06/09/2025

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MARK E. SIMMONS** | § | Case No. 23-10130 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JULIE SIMMONS | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 24-1006 |
| | § | |
| MARK E. SIMMONS | § | |
| | § | |
| Defendant | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  These findings and conclusions constitute the Court's findings of fact and conclusions of law and fact pursuant to Fed. R. Civ. P. 52, made applicable to adversary proceedings by Fed. R. Bankr. P. 7052. Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

### Findings of Fact

2.  Debtor, Mark E. Simmons, is an individual whose listed residence is 5521 US 96 South, Jasper, TX 75951.

3.  Plaintiff, Julie Simmons, is an individual resident of Newton, Texas.

4.  Debtor filed Chapter 13 Case No. 23-10130 in this Court on April 6, 2023. Later, on March 21, 2024, the case converted to Chapter 7. Stephen J. Zayler was appointed as Chapter 7 Trustee.

5.  On April 10, 2024, Debtor filed conversion schedules. In these conversion

schedules, Plaintiff, Julie Simmons, was listed as an unsecured creditor on Schedule E/F owed a debt in the amount of $117,838.73.  This debt was listed as having been incurred in November 2019 and was described by Debtor as being owed for "property division."[1]

6.    The Chapter 7 Trustee in Defendant's underlying bankruptcy case filed a no distribution report on April 19, 2024.

7.    Plaintiff filed this adversary on June 18, 2024.[2]

8.    The Court entered its "Joint Pre-Trial Order" on February 6, 2025.[3]

9.    The Court conducted a trial in this adversary proceeding on February 19, 2025.

10.    On February 21, 2025, the Court entered its "Order Directing Entry of a Chapter 7 Discharge Order."[4]

11.    Debtor was granted a discharge on February 28, 2025.[5]

12.    Plaintiff and Defendant were married for approximately nineteen and a half years.  They had no children together.  Plaintiff brought two children to their marriage, and Defendant brought two children to their marriage.

13.    Plaintiff was previously married, moved to Dallas with her first husband, and was later divorced.  Two years later, she married Defendant and moved to Newton, Texas, where Defendant is from.  They built a house in Newton, Texas on land owned by or obtained from Defendant's family.

14.    Plaintiff worked outside the home during the first two years of her marriage to

---

[1] Case No. 23-10130, ECF No. 75.

[2] Case No. 24-1006. ECF No. 1.

[3] Case No. 24-1006, ECF No. 15; *See also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998) (quoting *Branch–Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991) "It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial.").

[4] Case No. 23-10130, ECF No. 106.

[5] Case No. 23-10130, ECF No. 109.

Defendant, but the remainder of their marriage she was a homemaker. Plaintiff stated she was a homemaker for eighteen years prior to her divorce from Defendant.

15.     Defendant owned a business called "Simmons' Custom Cabinets" during their marriage, which Plaintiff testified was successful. Her recollection was that during the last three years of their marriage, Defendant earned approximately $400,000 to $600,000 annually. He earned substantially more than her at the time of their divorce.

16.     Plaintiff and Defendant were divorced on November 20, 2019, pursuant to a "Final Decree of Divorce" entered in Cause No. 5118D, styled *In the Matter of the Marriage of Julie Marie Simmons and Mark Edward Simmons*.[6]

17.     Their divorce decree contained the following provisions, in relevant part:

     a.     "IT IS ORDERED AND DECREED that Respondent, Mark Edward Simmons, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Petitioner, Julie Marie Simmons, and her property harmless from any failure to so discharge, these items:

        R-1. The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by Julie Marie Simmons and Mark Edward Simmons, payable to Mr. Cooper (Nationwide), and secured by deed of trust on the real property awarded in this decree to the Respondent, which is recorded Deed of Trust Records of Newton County, Texcas.

        R-2. The balance due, including principal, interest, and all other charges, on the promissory note payable to Suntrust Bank, and given as part of the purchase price of and secured by a lien on the 2018 Chevrolet Traverse motor vehicle awarded to Petitioner."

     b.     "<u>Judgment and Lien to Equalize Division</u>

        For the purpose of a just and right division of property made in this decree, IT IS FURTHER ORDERED AND DECREED that Petitioner, Julie Marie Simmons, is awarded judgment of amount ($290,000.00) against Respondent, Mark Edward Simmons, payable in accordance with the terms

---

[6] Pl. Ex. 1.

of the closing documents ordered in this decree to be executed, with interest at five percent (5%) per year compounded annually from the date of judgment, for which let execution issue.

This judgment is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support."

c.    "Lien

The Court finds that this decree is a partition of the community property of the parties.  Because of the nature of the properties making up the estate, the property cannot be divided in a just and right manner without impairing the value of all portions. A vendor's lien note in the amount of amount ($290,000.00) is necessary to make a just and right partition of the property."

d.    "Mark Edward Simmons IS ORDERED to sign a vendor's lien note for amount ($290,000.00) payable to Julie Marie Simmons. The note shall bear interest at five percent (5%) per year, compounded annually. It is to be payable according to the following terms: $4,000.00 a month for seventy-three (73) months beginning sixty (60) days from the date of divorce. "

e.    "Mark Edward Simmons is ORDERED to sign an owelty lien deed of trust to Julie Marie Simmons to secure the note."

f.    "Treatment/Allocation of Community Income for Year of Divorce

IT IS ORDERED AND DECREED that, for the calendar year 2019, each party shall file an individual income tax return in accordance with the Internal Revenue Code.

IT IS ORDERED AND DECREED that for calendar year 2019, each party shall indemnify and hold the other party and the other party's property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such

information to the other party as is requested to prepare federal income tax returns for 2019 within thirty days of receipt of a written request for the Information, and in no event shall the available information be exchanged later than March 1, 2020, As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate."

g.      "IT IS ORDERED that upon paying off the 2018 Chevrolet Traverse motor vehicle, vehicle identification number I GNEVKKWXJJ201105, that Mark Edward Simmons shall immediately sign over the title to Julie Marie Simmons."

h.      "*Decree Acknowledgment*

Petitioner, Julie Marie Simmons, and Respondent, Mark Edward Simmons, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue ohny coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce."[7]

18.   Defendant, as Grantor, executed a "Deed of Trust to Secure Owelty of Partition" (the "Owelty Deed of Trust) dated November 19, 2019, in favor of Plaintiff, as Beneficiary, to secure payment of a note dated November 19, 2019, in the original principal amount of $290,000.00 made by Defendant, as Maker, to Plaintiff, as Payee.[8]  The $290,000.00 note (the "Owelty Note") had a maturity date of

---

[7] Pl. Ex. 1.

[8] *Id.*

February 1, 2026.[9]  By this Owelty Deed of Trust, Defendant granted Plaintiff a lien against two pieces of property, one referenced as their "Marital Residence" and a second as the "Simmons Custom Cabinets Shop."  Both are described therein more specifically by metes and bounds.  The "Marital Residence" metes and bounds describes a property "containing 217800.162 square feet, 5.00 acres, more or less."  This Owelty Deed of Trust was recorded in the official public records of Newton County, Texas.[10]

19.  Plaintiff testified that Defendant became delinquent on payments under the Owelty Note.  As a result, Plaintiff initiated proceedings to foreclose her lien.

20.  Before foreclosure, Plaintiff agreed for the real property securing payment of the Owelty Note to be sold on July 21, 2022.  Closing was held at Garland Smith Abstract Company.  According to the Closing Disclosure prepared by the title company, the sales price was $420,000.00.[11]  After various closing costs, the bulk of these proceeds were then disbursed in the amount of $215,70.369 to pay off the lien held by Mr. Cooper, $33,587,91 as a "Pool Payoff", $5,903.71 to satisfy an abstract of judgment recorded by Citibank, and $126,061.27 to Plaintiff.[12]  Defendant did not receive any proceeds as a result of the sale.

21.  On July 22, 2022, Plaintiff signed a "Release of Lien(s),"[13] which described the same real property as in the Owelty Deed of Trust. The lien release was recorded in the official public records of Newton County, Texas.  This lien release contained the following provisions, in relevant part:

   a.    **"Deed of Trust to Secure Owelty of Partition and Lien(s) Are Described in the Following Documents:**

         Release of the Vendor's Lien retained in Deed dated November 20, 2019 from Julie Marie Simmons to Mark Edward Simmons recorded in Volume 725, Page 897, Official Public Records, Newton County, Texas, securing

---

[9] *Id.*

[10] *Id.*

[11] Def. Ex. B.

[12] *Id.*

[13] Def. Ex. A.

the payment of one note of even date therewith in the principal sum of $246,300.00, executed by Mark Edward Simmons, payable to Julie Marie Simmons, said note being additionally secured by Deed of Trust of even date therewith to William S. Marian, Trustee, recorded in Volume 725, Page 904, Official Public Records, Newton County, Texas. Additionally secured by Deed of Trust to Secure Owelty of Partition dated November 19, 2019 from Mark Edward Simmons, to William S. Marian, Jr, Trustee, recorded in Volume 725, Page 904, Official Public Records, Newton County, Texas, securing the payment of one note of even date therewith in the principal sum of $290,000.00 executed by Mark Edward Simmons payable to Julie Marie Simmons."

b.      "Lienholders acknowledge payment in full of any note or other indebtedness connected to the Deed of Trust to Secure Owelty of Partition and/or Lien(s), and releases the Property from the Lien(s) described above and from all liens held by Lienholders, without regard to how they were created or evidenced."[14]

22.   After the sale of real property, Plaintiff was diagnosed with cancer in August 2023, forcing her to undergo treatment that caused disruption to her post-divorce life.

23.   Plaintiff testified that the Owelty Note secured by the Owelty Deed of Trust was for her support.  Plaintiff claims damages for non-payment of $147,563.73, which Plaintiff calculated as the unpaid balance of the Owelty Note.

24.   Plaintiff testified that Defendant failed to make payments on the loan secured by the 2018 Chevrolet Traverse.  Plaintiff testified that the obligation to pay for the 2018 Chevrolet Traverse was for her support.  Plaintiff claims damages of $14,104.08 for non-payment of Defendant's obligation to make car payments on the 2018 Chevrolet Traverse.  No documentation regarding this loan or failure to make payments was admitted into evidence, other than references in the parties' divorce decree.

25.   Plaintiff testified that the obligation to pay for 2019 tax liability was for her support.  Plaintiff claims damages of $8,633.37 in tax liability over the 2019 and 2020 tax years she allegedly paid for Defendant.  No documentation of these alleged payments was admitted into evidence.

---

[14] *Id.*

26.     Plaintiff's subjective intent was to use payments under the Owelty Note for living expenses and to renovate a separate smaller house she purchased after the divorce.

27.     Plaintiff claims to be entitled to pre-judgment interest under the state court divorce decree and post-judgment interest until these damages are paid in full.

28.     Defendant did not testify at trial.

## **Conclusions of Law**

29.     This Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.  This Court has the authority to enter a final judgment on all issues raised in this adversary proceeding because it constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (J), and meets all constitutional standards for proper exercise of full judicial power by this Court.

30.     A determination of whether a particular debt is dischargeable under the Bankruptcy Code[15] is a question of federal law, although state law may inform that determination.  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

31.     When a plaintiff seeks to except a debt from discharge, they must prove their claims by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

32.     All exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."  *Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).  Such relief is afforded to the "honest but unfortunate" debtor.  *Lamar, Archer & Cofrin, L.L.P. v. Appling*, 584 U.S. 709, 715 (2018); *Lawrence v. Frost Bank (In re Lawrence)*, No. 21-10103, 2022 U.S. App. LEXIS 886, at *2 (5th Cir. 2022) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).

33.     Plaintiff seeks to have three debts allegedly owed by Defendant excepted from discharge only under 11 U.S.C. § 523(a)(5).  At trial, Plaintiff stated her intent to not proceed on her cause of action under 11 U.S.C. § 523(a)(2)(A).

---

[15] Title 11 of the United States Code is known as the "Bankruptcy Code."

34.  In viewing the dischargeability of debts in the domestic relations sphere in particular, the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 broadened the scope of debts potentially excepted from discharge in a bankruptcy case. *Morris v. Allen (In re Morris)*, 454 B.R. 660, 662 (Bankr. N.D. Tex. 2011) ["BAPCPA was meant to expand the universe of divorce-related debts excepted from discharge under 11 U.S.C. §523(a)(5) and 11 U.S.C. §523(a)(15)."]; *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 838 (B.A.P. 10th Cir. 2010) ["One of Congress's overarching themes in enacting BAPCPA was to redefine and reinforce the ability of non-debtor former spouses to recover both support and property settlement obligations from debtors in bankruptcy."].

35.  Regarding the changes wrought by BAPCPA, this Court wrote:

> Before the introduction of §523(a)(15) in 1994, debts arising from settlements in divorce proceedings were generally dischargeable if they could not be fairly characterized as an obligation "in the nature of support." The addition of §523(a)(15) in 1994, however, settled that issue to some degree by making all debts arising from a divorce decree or separation agreement non-dischargeable unless a debtor successfully demonstrated an inability to pay the contested domestic debt or established that a discharge of that debt would benefit him more than it would harm the non-debtor obligee. Thus, the (a)(15) exception to discharge for debts outside the standard (a)(5) category of support obligations was originally intended to protect non-debtor spouses who, for example, might have agreed to take lower child support payments in exchange for the assumption of marital debt by the obligor/debtor-spouse.

> However, the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 dramatically altered the language of §523(a)(15) by deleting both of the subsections under which a debtor might seek the dischargeability of a settlement debt. This deletion eliminated any consideration of a debtor's "ability to pay" or the use of any "balancing test" and instead rendered as non-dischargeable virtually all obligations arising between spouses as a result of a divorce decree. According to the revised subsection, as long as the obligation is "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record or a determination made in accordance with State or territorial law by a governmental unit," then its

enforcement cannot be eliminated by a bankruptcy discharge order.

*In re Wise*, Nos. 11-40741, 12-4035, 2012 Bankr. LEXIS 5176, at *15-19 (Bankr. E.D. Tex. 2012).

36.    Section 523(a)(5) of the Bankruptcy Code exempts from discharge any "domestic support obligation" as that term is defined by section 101(14A).[16]

37.    Section 523(a)(15) of the Bankruptcy Code exempts from discharge an obligation ". . .to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . ."

38.    Section 523(a)(5) works in tandem with section 523(a)(15).  When an obligation cannot technically meet the definition of a domestic support obligation under section 101(14A), the Bankruptcy Code may still except that same obligation from

---

[16]  Section 101(14A) defines "domestic support obligation" as:

"[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provisions of this title, that is–

(A) owed to or recoverable by--
          (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
          (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
          (i) a separation agreement, divorce decree, or property settlement agreement;
          (ii) an order of a court of record; or
          (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; ....

11 U.S.C. § 101(14A).

discharge under section 523(a)(15).  This dichotomy in Chapter 7 cases,[17] renders
it unnecessary for the Court to analyze whether a debt meets the statutory
definition of a domestic support obligation if a party can demonstrate that debt
would be nondischargeable under the less stringent evidentiary requirements of
section 523(a)(15).  *Tritt v. Tritt (In re Tritt)*, Nos. 12-42446, 12-4186, 2014
Bankr. LEXIS 1348, at *17 (Bankr. E.D. Tex. 2014); *see also Berse v. Langman
(In re Langman)*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012).

39.    This case is unusual in that Plaintiff asked for relief only under section 523(a)(5)
and omitted a cause of action under section 523(a)(15).[18]  The "Joint Pre-Trial
Order" entered on February 6, 2025 and signed by counsel for both parties,
contained the following statements:

a.    "Plaintiff claims a debt under the Final Decree of Divorce between
Defendant and Plaintiff constitutes, at least in part, a domestic support
obligation and that such obligation is non-dischargeable pursuant to 11
U.S.C. § 523(a)(5)."[19]

b.    "The parties agree that jurisdiction is proper in the instant matter and that
the provisions of Bankruptcy Code Section 11 U.S.C. § 523(a)(5), govern
the claims made the basis of this Adversary Proceeding."[20]

40.    A bankruptcy court is generally confined to grant a Plaintiff only the relief
requested in the operative complaint, except where Fed. R. Civ. P. 54(c) is
applicable.[21]  Fed. R. Civ. P. 54(c) provides:

---

[17] "[I]n chapter 13 cases, debts encompassed by section 523(a)(5) are not dischargeable, while
debts encompassed by section 523(a)(15) are dischargeable, unless the debtor obtains a hardship
discharge under section 1328(b)." 4 COLLIER ON BANKRUPTCY ¶ 523.23 at p.523-126 (16th ed. 2013); *In
re Young*, 425 B.R. 811, 815 (Bankr. E.D. Tex. 2010).  Among other important distinctions, in the
absence of an agreement otherwise, a DSO must be addressed as a priority claim in a Chapter 13 plan
pursuant to section 1322(a)(2) due to its priority status under section 507(a)(1)(A).  A failure to pay a
DSO in the post-petition period also precludes confirmation under section 1325(a)(8) and constitutes an
independent ground for dismissal of the Chapter 13 case under section 1307(c)(11).

[18] ECF Nos.1, 3, and 14.

[19] 1, ECF No. 15.

[20] 3, ECF No. 15.

[21] Fed. R. Civ. P. 54(c) is applicable to this proceeding pursuant to Fed. R. Bankr. P. 7054(a).

(c) Demand for Judgment; Relief to Be Granted. A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

41.    The 5th Circuit has explained the operation of this rule as follows:

Rule 54(c)'s remedial latitude is not unlimited. Although the rule authorizes relief beyond what a complaint specifically requests, the relief granted "must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had an opportunity to challenge." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 n.4 (5th Cir. 2015) (quoting 10 Charles Alan Wright, Arthur Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2662 (4th ed. 2014), at 165); see also 10 Moore's Fed. Prac., Civil § 54.72 (2024) (relief under Rule 54(c) "may not be granted . . . on an issue not properly presented to the court for resolution"). In other words, "[t]he discretion afforded by Rule 54(c) . . . assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Peterson*, 806 F.3d at 340.

*Deanda v. Becerra*, 96 F.4th 750, 768 (5th Cir. 2024)

42.    In another recent opinion, the 5th Circuit reaffirmed its guidance on the operation of Fed. R. Civ. P. 54(c):

We continue to adhere to the view that Rule 54(c) offers "remedial latitude," insofar as judgments need not be limited to the kind or amount of relief pleaded, but we think it a step too far for the district court to award relief never pleaded (indeed, abandoned), and to do so at the last stage of proceedings and for particular agency actions never expressly challenged.

*Braidwood Mgmt. v. Becerra*, 104 F.4th 930, 953 (5th Cir. 2024).

43.    In practice then, Rule 54(c) means a bankruptcy court may grant relief not specifically requested in the operative complaint if that relief is justified by the pleadings, the evidence presented, and granting such relief does not prejudice the opposing party.  As one court explained:

Under Federal Rule of Civil Procedure 54(c), "district courts [may] grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015); see also *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975) (Rule 54(c) "has been construed liberally[.]"). "Rule 54(c) does not permit unrequested relief when it operates to the prejudice of the opposing party, such as when relief is finally sought at a late stage of the proceedings." *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) (cleaned up); see also *id*. ("The discretion afforded by Rule 54(c) [] assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant."). But when a district court permits the parties to "present[] . . . arguments" concerning the specific relief, and when a party "ha[s] every reason to expect that the court might" grant such relief, "there [is] no prejudice" under Rule 54(c). *Id*. at 735.

*Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 377-78 (N.D. Tex. 2021).

44.   Plaintiff requested emergency leave to amend her complaint, for the third time, two days before trial to add a cause of action under section 523(a)(15), which request was heard by the Court prior to start of trial.[22]  For the reasons set forth on the record in an oral ruling, and in reliance on the applicable standards for evaluating requests for leave to amend under Fed. R. Civ. P. 15(a)(2), the Court denied Plaintiff's emergency request for leave to amend.[23]  This denial was not appealed by Plaintiff.  If the Court were now, under Fed. R. Civ. P. 54(c) to grant relief under section 523(a)(15), it would be granting relief which prejudices the opposing party as a result and doing so at a very late stage of the proceeding. Thus, the Court declines to grant relief outside the operative complaint under Fed. R. Civ. P. 54(c).

45.   Therefore, the Court considers whether each of the debts sought to be excepted from discharge comprises a "domestic support obligation" as defined by section 101(14A) which are nondischargeable under section 523(a)(5) of the Bankruptcy

---

[22] ECF No. 21.

[23] ECF No. 22.

Code. Debts meeting the statutory definition are excepted, but those failing to meet the definition are not. Prior to considering this question, however, the Court must first consider whether a debt even exists that may be held nondischargeable.

46. "A bankruptcy court cannot declare a debt nondischargeable until the creditor establishes the existence and amount of that debt." *In re Avery*, 594 B.R. 655, 661 (Bankr. S.D. Miss. 2018); see also *In re Burg*, 641 B.R. 120, 131 (Bankr. S.D. Tex. 2022). As the Court in *Burg* explained, "debt" is a defined term meaning "liability on a claim" and "claim" is a defined term meaning a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ." *In re Burg*, 641 B.R. at 131; 11 U.S.C. §§ 101(12) and 101(5).

47. The Court took judicial notice of the filing of Defendant's schedules and statements. After conversion from Chapter 13 to 7, Defendant filed conversion schedules in the underlying bankruptcy case.[24] In Schedule E/F of those conversion schedules, Defendant listed a non-contingent, liquidated, undisputed debt incurred November 2019 as being owed to Julie Simmons in the amount of $117,838.73. The type of this nonpriority unsecured claim was described as "Property division." This scheduled debt is an admission by Defendant of a debt owed to Plaintiff.

48. However, when the real property securing payment of the Owelty Note was sold, Plaintiff signed a release and acknowledged ". . . payment in full of any note or other indebtedness connected to the Deed of Trust to Secure Owelty of Partition and/or Lien(s), and releases the Property from the Lien(s) described above and from all liens held by Lienholders, without regard to how they were created or evidenced."[25]

49. An instrument releasing a lien does not necessarily release corresponding indebtedness if that indebtedness has not been paid as recited in the release, because "[m]inimal consideration can be sufficient to support the release of a larger indebtedness where the intent to release is shown, but where the stated consideration is shown not to have been delivered, the debt is not extinguished." *Evans v. Evans*, 766 S.W.2d 356, 357 (Tex. App.—Texarkana 1989, no writ); *Amarillo v. Jones*, 183 S.W. 874 (Tex. 1916). One court more recently described

---

[24] Case No. 23-10130, ECF No. 75.

[25] Def. Ex. A.

the *Evans* and *First Bank of Amarillo* decisions as follows:

> Both *First State Bank of Amarillo* and *Evans* stand for the proposition that, when a release categorically recites that the underlying indebtedness was paid in full, but the debt has not actually been paid in full, the debt is not released unless the debtor can show the creditor otherwise intended to release the indebtedness despite his failure to fully pay the debt. *Evans*, 766 S.W.2d at 357; *First State Bank*, 107 Tex. at 631, 183 S.W. 874.  The ultimate question involves a factual determination as to the creditor's intentions in filing the release.

> *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 746 F. Supp. 2d 819, 831–32 (S.D. Tex. 2010).

50.   Understanding the parties' intent starts, but does not in this case end, with the language in the release signed by Plaintiff.  That language is unambiguous in the stated effect of what it purports to release: both "any" note or indebtedness "connected" to the Owelty Deed of Trust, and "all" liens held by "Lienholdiers" (i.e. Plaintiff) "without regard to how they were created or evidenced."[26]

51.   Parol evidence is generally inadmissible to contradict terms in a written contract or document, but this rule is not absolute.  The *Evans* court wrote on the subject:

> There are exceptions to this general rule, however, and one of those exceptions is that parol evidence may be received to prove that the consideration recited in deeds or other written instruments was not in fact paid. *Lanier v. Faust*, 81 Tex. 186, 16 S.W. 994 (1891); *Keel v. Hoggard*, 590 S.W.2d 939 (Tex.Civ.App.–Waco 1979, no writ). It has long been recognized that the recitation of consideration in the nature of a receipt can be explained or contradicted by parol evidence. *Lanier v. Faust*, 16 S.W. at 995.

> *Evans v. Evans*, 766 S.W.2d 356, 357 (Tex. App.—Texarkana 1989, no writ).

52.   The main testimony regarding sale of the property securing payment of the $290,000.00 came from Plaintiff.  As set forth above, the parties' prior marital residence was sold on July 21, 2022 for $420,000.00, of which $126,061.27 was

---

[26] *Id.*

paid to Plaintiff after satisfaction of other liens and costs.  Plaintiff further testified she attempted to foreclose her owelty lien three times but ultimately decided to permit the sale to occur.  Plaintiff testified that in addition to the $126,061.27, she was paid $66,000.00 (approximately) in Owelty Note payments by Plaintiff, though no documentation in support of this figure was admitted.  Plaintiff's testimony reflects limited intent, if any, to release the balance of the Owelty Note.

53.    Defendant listed a debt to Plaintiff in his conversion schedules in the amount of $117,838.73.  Defendant has failed to show it was Plaintiff's intent to release the entire balance of the Owelty Note rather than only the lien securing its payment. The Court finds a debt exists in the amount of $117,838.73 owed to Plaintiff.

54.    Plaintiff claims three debts meet the statutory definition of a domestic support obligation and under section 523(a)(5) should be nondischargeable.  These are:

    a.    Damages of $147,563.73 representing the alleged unpaid balance of the Owelty Note and lien.

    b.    Damages of $14,104.08 resulting from Defendant's alleged non-payment of his obligation to make car payments on the 2018 Chevrolet Traverse.

    c.    Damages of $8,633.37 resulting from Defendant's alleged non-payment of tax liability over the 2019 and 2020 tax years.

55.    To qualify as a domestic support obligation the requirements must be met under the current definition in section 101(14A).  These requirements are, in relevant part for this case, that the obligation in question be:

    a.    "[A] debt . . .
    b.    . . that accrues before, on, or after the date of the order for relief in a case under this title . . .
    c.    . . . that is–(A) owed to or recoverable by–
        i.    a . . . former spouse . . .
    d.    . . . that is–(B) in the nature of alimony, maintenance, or support ... of such . . . former spouse . . . without regard to whether such debt is expressly so designated; and
    e.    . . . that is–(C) established . . . on, or after the date of the order for relief . . . by reason of applicable provisions of–
        i.    a . . . divorce decree . . ."

56.    All of these elements in section 101(14A) must be satisfied to for a debt to be
considered a domestic support obligation. *In re Gentry*, No. 05-60728-RLJ-13,
2006 Bankr. LEXIS 4556, at *5 (Bankr. N.D. Tex. 2006)(citing *Bruce v. First Fed.
Sav. and Loan Ass 'n of Conroe, Inc.*, 837 F.2d 712, 715 (5th Cir. 1988)).
However, "[t]his definition has not always been applied literally." *Eric D. Fein,
P.C. v. Young (In re Young)*, 425 B.R. 811, 818 (Bankr. E.D. Tex. 2010)(citing *In
re Rios*, 901 F.2d 71, 72 (7th Cir. 1990)).

57.    Regarding the Owelty Note, the Court has already found existent an unpaid
balance in the amount of $117,838.73 which comprises "a debt . . . that accrues
before, on, or after the date of the order for relief in a case under this title . . ."  The
Court also finds the Owelty Note "accrue[d] before, on, or after the date of the
order for relief . . ." and is "owed to or recoverable by a . . . former spouse . . ."
The Court further finds that the Owelty Note exists "by reason of applicable
provisions of a . . . divorce decree . . ."

58.    Regarding the $14,104.08 alleged to result from Defendant's non-payment of his
obligation to make car payments on the 2018 Chevrolet Traverse, the Court finds
the evidence insufficient to show that such alleged amount comprises "a debt . . .
that accrues before, on, or after the date of the order for relief in a case under this
title . . ." which is "owed to or recoverable by a . . . former spouse . . . . . by reason
of applicable provisions of a . . . divorce decree . . ."

59.    Regarding Defendant's alleged debt for tax liability for the 2019 and 2020 tax
years, the Court finds sufficient evidence that a pre-petition debt exists for tax year
2019.  The Internal Revenue Service filed a proof of claim in Defendant's
bankruptcy case, last amended on October 30, 2023, in the total priority unsecured
amount of $27,414.23.[27]  This claim reflects an income tax liability for tax year
2019 in the amount of $8,481.00, with interest to the petition date of $961.13,
which liability was assessed November 23, 2020.[28]  The Court finds that such
liability "accrue[d] before, on, or after the date of the order for relief . . ."

60.    The underlying 2019 tax liability is owed to the Internal Revenue Service by
Defendant, and is not "owed to or recoverable by a . . . former spouse . . ."
However, to the extent Plaintiff is held responsible for Defendant's 2019 tax
liability such responsibility is a debt "owed to or recoverable by a . . . former

---

[27]  Case No. 23-10130, Official Claims Register, POC 11-3.

[28]  *Id*.

spouse . . ."  Therefore, Defendant's responsibility to indemnify Plaintiff for that same tax liability is a debt "owed to or recoverable by a . . . former spouse . . ." which exists "by reason of applicable provisions of a . . . divorce decree . . ."

61.   Under the terms of the divorce decree, no such debt exists to Plaintiff regarding tax year 2020.

62.   Therefore, the ultimate issue is whether the unpaid Owelty Note balance of $117,838.73 and any liability of Plaintiff to the Internal Revenue Service on account of Defendant's failure to pay 2019 tax liability meet the section 101(14A) definition for "domestic support obligation" thus making them non-dischargeable under section 523(a)(5).  This depends on whether these two debts were " . . . in the nature of alimony, maintenance, or support ... of such . . . former spouse . . . without regard to whether such debt is expressly so designated . . ."

63.   Since the 2005 amendments to Title 11, this Court has rarely considered whether a debt is "in the nature of alimony, maintenance, or support" due to the existence and scope of 11 U.S.C. § 523(a)(15).  However, due to that provision's unavailability in this case, the Court must do so.  The Court in *Gentry* provided an excellent explanation of the precedent on which this Court should rely when making this determination:

> The bankruptcy court applies federal law in determining whether a divorce decree creates a debt that is "in the nature of alimony, maintenance, or support." See *Matter of Dennis*, 25 F.3d 274, 278 (5th Cir. 1994); *see also In re Jones*, 9 F.3d 878, 880 (10th Cir. 1993) (ruling that debt may be in the nature of alimony, maintenance, or support under federal bankruptcy law, even though it is not legally qualified as alimony under state law); *Adams v. Zentz*, 963 F.2d 197, 199 (8th Cir. 1992) (determining that neither state law nor the divorce decree characterization of the debt is binding on bankruptcy courts).

> The Fifth Circuit Court of Appeals has established a non-exclusive list of factors for a bankruptcy court to review when determining whether or not a divorce obligation constitutes alimony, maintenance, or support. *In re Joseph*, 16 F.3d 86, 88 (5th Cir. 1994). Those factors include, but are not limited to, the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued. *Id.* "The presence of one or more of

these factors does not necessarily mean the obligation is one of support nor does the absence of one or more indicate the award is part of a property settlement. Determination of whether support or a property settlement is involved must be made on a case by case basis." *In re Fox*, 5 B.R. 317, 321 (Bankr. N.D. Tex. 1980).

*In re Gentry*, No. 05-60728-RLJ-13, 2006 Bankr. LEXIS 4556, at *5-7 (Bankr. N.D. Tex. 2006)

64.   The Fifth Circuit has written, regarding 11 U.S.C. § 523(a)(5):

Section 523(a)(5) exempts from discharge any debt owed to a former spouse or child for alimony, maintenance, or support.  "Whether a particular obligation constitutes alimony, maintenance, or support within the meaning of this section is a matter of federal bankruptcy law, not state law."  This premise proves particularly important in states such as Texas where no permanent alimony exists. In Texas, "support in the future can play a significant role in the divorce court's property division and … what may appear to be a mere division of assets may in fact … contain a substantial element of alimony-substitute, support or maintenance, however termed." Thus, we must place substance over form to determine the true nature and purpose of the award, regardless of the label used.

*Joseph v. J. Huey O'Toole, P.C. (In re Joseph)*, 16 F.3d 86, 87-88 (5th Cir. 1994)(citing *In re Nunnally*, 506 F.2d 1024, 1027 (5th Cir. 1975) and *Matter of Benich*, 811 F.2d 943 (5th Cir. 1987)).

65.   Reviewing a decision applying these *Joseph* factors, the Fifth Circuit approved a finding of non-dischargeability as follows:

In *In re Joseph*, this Court set forth a nonexclusive list of factors which bankruptcy courts should review in deciding whether a divorce obligation constitutes alimony, maintenance, or support. The considerations include the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued. *In re Joseph*, 16 F.3d at 88. The bankruptcy court in this case, reviewing these and other similar factors, recognized that at the time of the divorce, Joyce was a fifty-four year old woman who had not worked outside the home in more than twenty-eight

years. She had no job, no job offers, no work skills, and no college education. LeBaron, on the other hand, had an extremely successful medical practice and was earning well over a quarter of a million dollars a year at the time of the divorce. In light of these financial disparities, the bankruptcy court found that LeBaron's obligation to pay the taxes on Joyce's share of the military pension was, in true nature, alimony, maintenance, or support under section 523(a)(5)(B) of Title 11. The court therefore ruled that LeBaron's debt on the taxes was nondischargeable. Unlike the district court, which did not review the facts of this case in light of bankruptcy law, but instead held that the collateral estoppel doctrine controlled, we find no error in the bankruptcy court's decision.

*Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 279 (5th Cir. 1994)

66.   This Court finds that, under the *Joseph* factors, both the unpaid Owelty Note balance of $117,838.73, and any liability of Plaintiff to the Internal Revenue Service on account of Defendant's failure to pay 2019 tax liability, are debts " . . . in the nature of alimony, maintenance, or support ... of such . . . former spouse . . . without regard to whether such debt is expressly so designated . . ."

67.   At trial, the Court heard testimony that the parties were married for approximately twenty years, had no children together, and that Plaintiff did not work the last eighteen years of her marriage to Defendant. Defendant's business was, for the majority of their marriage, successful, and there was a great disparity in their earning capacity and professional opportunities at the time of their divorce. Plaintiff testified she expected to use funds from Defendant through their divorce to help support her living expenses. No other support in the nature of alimony was provided to be paid in the parties' divorce decree. After their divorce, she significantly downsized her home, lowered her living standard, and began working at a job with relatively low income. Approximately four years after their divorce, Plaintiff was diagnosed with cancer and was forced to take time off work for treatment.

68.   Significant financial disparity existed at the time of the parties' divorce. Plaintiff would likely have benefitted financially, though perhaps not personally, had the marriage continued. Since their divorce, and despite the bankruptcy filing of Defendant, this disparity appears to have continued.

69.   Plaintiff also seeks recovery of pre-judgment and post-judgment interest on the unpaid balance of the Owelty Note. The Court was not provided with sufficient

evidence to support or permit the calculation of pre-judgment interest.  No clear default date was provided, no payment history, no balance calculation, and no copy of the Owelty Note itself.  Nor was any demand letter as contemplated by Tex. Civ. Prac. & Rem. Code § 38.001, et. seq. admitted into evidence.  For this reason, no prejudgment interest is granted.

70.   Plaintiff will be granted post-judgment interest at the rate specified in 28 U.S.C. § 1961.[29]

## **Conclusion**

71.   Plaintiff, Julie Simmons, has demonstrated by a preponderance of the evidence that the unpaid balance of $117,838.73 of the Owelty Note dated November 19, 2019, in the original principal amount of $290,000.00 made by Defendant, Mark Edward Simmons, as Maker, to Plaintiff, as Payee, constitutes a domestic support obligation as defined by 11 U.S.C. § 101(14A).

72.   Plaintiff, Julie Simmons, has failed to demonstrate by a preponderance of the evidence that the $14,104.08 alleged to result from Defendant's non-payment of his obligation to make car payments on the 2018 Chevrolet Traverse constitutes a domestic support obligation as defined by 11 U.S.C. § 101(14A).

73.   Plaintiff, Julie Simmons, has demonstrated by a preponderance of the evidence

---

[29] The 5th Circuit recently determined this statute is applicable to this Court:

So we think the text of 28 U.S.C. § 1961 compels the conclusion that post-judgment interest applies to adversary proceedings in bankruptcy, except in cases where more specific provisions of Title 11 may control. And we are assured by the holdings of our sister circuits. *See In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) ("Because a bankruptcy court is part of the district court, [§ 1961] applies to bankruptcy proceedings." (*quoting In re Pester Refin. Co.*, 964 F.2d 842, 849 (8th Cir. 1992)); *In re Resyn Corp.*, 945 F.2d 1279, 1284 (3d. Cir. 1991) (similar); *see also In re Williams*, 11 F. App'x 344, 347 n.8 (4th Cir. 2001) (per curiam) (noting § 1961 applied in an adversary proceeding); *see also Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992) (noting that § 1961 applies generally in bankruptcy court, but applying Title 11's more specific provision to the case); *In re Celotex Corp.*, 613 F.3d 1318, 1320-23, 1322 n.3 (11th Cir. 2010) (agreeing that 28 U.S.C. § 1961 applies in bankruptcy court, but applying 11 U.S.C. §§ 524 and 1141's more specific provisions).

*Carmichael v. Balke (In re Imperial Petro. Recovery Corp.)*, 84 F.4th 264, 272 (5th Cir. 2023).

that, to the extent she is held responsible by the Internal Revenue Service for Defendant's tax liability for the 2019 tax year, Defendant's obligation to indemnify her in full for any such liability constitutes a domestic support obligation as defined by 11 U.S.C. § 101(14A).

74.    Plaintiff, Julie Simmons, has successfully shown that Defendant, Mark E. Simmons's unpaid balance of $117,838.73 under the Owelty Note dated November 19, 2019, in the original principal amount of $290,000.00 made by Defendant, Mark Edward Simmons, as Maker, to Plaintiff, as Payee, is nondischargeable to Plaintiff as a domestic support obligation under 11 U.S.C. § 523(a)(5).

75.    Plaintiff, Julie Simmons, has failed to successfully show that the $14,104.08 alleged to result from Defendant's non-payment of his obligation to make car payments on the 2018 Chevrolet Traverse, is nondischargeable to Plaintiff as a domestic support obligation under 11 U.S.C. § 523(a)(5).

76.    Plaintiff, Julie Simmons, has successfully shown that to the extent she is held responsible by the Internal Revenue Service for Defendant's tax liability for the 2019 tax year, Defendant's obligation to indemnify her in full for any such liability is nondischargeable to Plaintiff as a domestic support obligation under 11 U.S.C. § 523(a)(5).

77.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 6/9/2025

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE